IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BALTIMORE PILE DRIVING AND MARINE CONSTRUCTION, INC.,** | * | |
| *Plaintiff,* | * | |
| v. | * | Case No. 1:24-cv-02176-JMC |
| **TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, et al.,** | * | |
| *Defendants.* | * | |
| | * | |

* * * * * * * * * * * * * * *

## MEMORANDUM OPINION AND ORDER

Plaintiff, Baltimore Pile Driving and Marine Construction, Inc. ("Baltimore Pile"), filed the present lawsuit against Defendants Travelers Casualty and Surety Company of America ("Travelers") and JJID, Inc. ("JJID") on April 9, 2024, in the Circuit Court for Baltimore City, Maryland. (ECF No. 1). Plaintiff filed an Amended Complaint in the same court on May 3, 2024, which is the operative complaint. (ECF No. 3). Plaintiff asserts two counts against Defendants: Payment Bond Claim against Travelers (Count I); and Breach of Contract against JJID (Count II). *Id* at 4.[1] Upon Defendants' petition, and under a diversity of citizenship theory, the lawsuit was removed to this Court on July 26, 2024. (ECF No. 2). On September 17, 2024, Defendants filed their Answer to the Amended Complaint and JJID asserted a counterclaim against Baltimore Pile, alleging breach of contract. (ECF No. 10). Currently pending before the Court is Plaintiff's Motion for Summary Judgment, and JJID's Cross-Motion for Partial Summary Judgment. (ECF No. 25; ECF No. 28). The motions have been fully briefed, (ECF No. 25; ECF

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. Where a document is not electronically stamped, the citation is instead to the number at the bottom of the page.

No. 28; ECF No. 29), and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth herein, both Plaintiff's Motion for Summary Judgment (ECF No. 25) and JJID's Cross-Motion for Partial Summary Judgment (ECF No. 28) shall be DENIED.

I. **BACKGROUND**

    a. **Factual Background**[2]

This action arises out of a March 2023 contract between two construction contractors—JJID, a Delaware corporation, and Baltimore Pile, a Maryland corporation—for the installation of an auger cast pile foundation to support the construction of the Baltimore Harbor Tunnel Ventilation Building (the "Project") at the Baltimore Harbor Tunnel in Baltimore City, Maryland. (ECF No. 3 at 1-3; ECF No. 25-2 at 2). The Project was managed by the Maryland Transportation Authority (MDTA), who as "Owner", for purposes of the contract, entered into the initial construction agreement (the "Prime Contract") with W.M. Schlosser, Inc. (Schlosser). (ECF No. 3 at 2-3; ECF No. 25-2 at 2). Schlosser then hired JJID as a subcontractor, who in turn, subcontracted with Baltimore Pile to install the auger cast piles. (ECF No. 3 at 2-3). Travelers, a Connecticut corporation, provided a payment bond on behalf of JJID to Schlosser "as security for payment of subcontractors." (ECF No. 3 at 3; ECF No. 25-6).

Per the terms of the Subcontract Agreement (the "Subcontract"), and incorporated Proposal,[3] between JJID and Baltimore Pile, Baltimore Pile agreed to provide an engineered design, install nine 60-foot-deep piles, and perform load testing. (ECF No. 25-2 at 2, 8). The incorporated Proposal states several "Standard Contract Exclusions," which include "3rd Party Inspections" and "[b]elow grade obstructions in the form of rock, cobble, boulders, trash, buried

---

[2] The following facts are undisputed, unless specifically noted, or otherwise characterized as being the position of one of the parties.
[3] The Subcontract Agreement incorporated the proposal only "for reference to price, scope, and timing." (ECF No. 25-2 at 2).

debris, or other forms of obstruction which cause refusal and or damage to piles, tooling, caps and hammers." (ECF No. 25-2 at 2, 9). The total contract price was $120,000.00, with payment to be made in full "[u]pon completion of the work covered by [the] Agreement, and after all such work is accepted by the Owner." *Id*. at 3. Section XII of the Subcontract, entitled "Special Provisions," further provides that "JJID can only pay for MTA approved materials and workmanship." *Id*. at 7. The Subcontract also provides for the issuance of "backcharges" in the event that Baltimore Pile failed to perform, specifically:

> Should the Subcontractor fail at any time to supply a sufficient number or [sic] properly skilled workmen and/or sufficient materials and equipment of proper quality, or fail in any respect to prosecute the Subcontract Work with promptness and diligence, or fail to promptly correct defective work, or fail in performance of any of the agreements contained herein, the Contractor may, in its sole discretion and upon not less than five (5) days written notice provide such labor, materials and equipment and deduct the cost thereof, from any money then due or thereafter to become due to the Subcontractor.

*Id*. at 6.

Baltimore Pile began installation of the auger cast piles at the Project site during December 2023. (ECF No. 28-4 at 3). While drilling, it encountered buried foreign material, including wire cable and wood, and hard soil, but was nonetheless able to complete the work that same month. (ECF No. 28-4 at 3; ECF No. 28-5). The Court has been made aware of several communications following the completion of Baltimore Pile's work among the parties, MDTA, Schlosser, and third parties. First, on January 18, 2024, JJID reported to Schlosser the unexpected obstructions Baltimore Pile encountered and requested additional compensation of $38,987.49, accordingly. (ECF No. 28-5 at 2-3). At some point prior to March 2024, JMT, an engineer advising MDTA, and MDTA, requested that "additional testing" be performed on the piles. (ECF No. 28-4).[4]

---

[4] The Court is not privy to these communications at this time, but they have been referenced by the parties. Furthermore, it is unclear to the Court at this time if Baltimore Pile performed any Load Testing prior to MDTA's order for additional testing, or at any other time.

Then, on March 7, 2024, Aver Technologies (Aver) performed, "Low Strain Pile Integrity Testing" on all nine piles for an estimated cost of $40,500.00. (ECF No. 28-5). In a March 3rd time sheet, while cleaning the piles and preparing the site for the testers to arrive, a JJID employee remarked, in part, that "diameter and elevation are very different on each [pile]. Nothing uniform on any." *Id*. Between May 13, 2024, and May 15, 2024, Aver also completed a "Static Load Test" on two piles. *Id.* Following these two rounds of testing, Schlosser emailed JJID on May 20, 2024, complaining of delay and threatening to submit backcharges to JJID:

> Pile tension testing was successfully completed on 5/13 and JJID has yet to produce the report 1 week later. JJID's subcontractor Baltimore Pile Driving mobilized in December, completed the work in December, and 5 months later the project is still being delayed for an installation that was supposed to last for 2-3 weeks. Management of your sub is not our responsibility, and we have been more than patient to this point. Our LDs are $1800/day. We have every intention of sending you the back charge as all of the delays have been caused by your subcontractor Baltimore Pile Driving. Doing the rough math that's $300k. WMS will pay AVER for the tension testing and report and send you the back charge if this report is not sent to us by COB today.

(ECF No. 28-4).[5]

JJID replied to that email with the following email that same day:

> JMT the engineer of record has demanded the extensive additional testing of these piles and that has been the primary delay cause. Baltimore Pile Driving despite what any of us think or [sic] their overall performance, has valid claims for delay and obstruction, and a recently approved scope of work. JJID has to date insulated WM Schlosser from the bond claim and lawsuit that Baltimore Pile Driving has filed against JJID. There are components of these claims that both JJID, WM Schlosser, and MTA all has shared liability on. We are currently reviewing the report in house to ensure that it satisfies the requirements for acceptance. We will forward this report within the next 48 hours.

*Id*.

In response to JJID, Schlosser responded, in part, and on that same day, as follows:

---

[5] In this same email, Schlosser stated that pile tension testing was successfully completed on 5/13, which invites some confusion as to whether the "load testing" performed on the two piles is substantially different from, or a part of, the pile tension testing

4

> *The poor performance, protracted installation time, deficient equipment, and lack of qualified supervision on the part of Baltimore Pile Driving caused the scrutiny by JMT.* Had they performed without these issues, we would have been standing steel on the Canton Building on April 15th as scheduled.

*Id*. (emphasis added).

At some point prior to May 30, 2024, Schlosser submitted at least three requests for additional compensation to MDTA, at least two of which appear to have been submitted on JJID's behalf, regarding the installation and testing of the piles at issue here. (ECF No. 10 at 11). On May 30, 2024, via email, MDTA initially rejected all three requests, labeled "PCO 11, 12, 13." *Id*. In that rejection email, MDTA stated that, regarding testing, Schlosser was only "instructed to perform a PIT test due to the poor installation of the auger cast pile" because Baltimore Pile's installation was unprofessional and did not align with the test pile. *Id*. Following these rejections, on July 26, 2024, Schlosser paid JJID the remaining balance to satisfy the full contract amount attributed to the auger cast pile work. (ECF No. 25-4; ECF No. 25-5).

However, as of July 2025, despite being paid the full contract amount owed to them by Schlosser, JJID has only paid Baltimore Pile $56,406.24–less than half of the $120,000.00 contract amount Baltimore Pile would be owed upon successful performance. (ECF No. 28-2). To support this withholding, JJID cites backcharges due to testing costs and maintains that the piles, as installed by Baltimore Pile, did not meet the contract specifications due to "diminished capacity," that the additional testing was required to obtain MDTA approval, and that MDTA and Schlosser have not, at this time, accepted Baltimore Pile's work. *Id*. at 6. Baltimore Pile, on the other hand, asserts that the work was "properly performed" and points out that the building has now been constructed on top of the pile foundation at issue. (ECF No. 25 at 2).

In what appears to be a partial reversal of course, MDTA, in a March 10, 2025 letter to Schlosser, approved PCO #11, stating that the "MDTA will provide financial compensation" in

5

the amount of $103,934.74 "for the additional costs of testing that proved the piles met the design criteria of the Contract," explaining that, "[s]ome of these tests were redundant and supported the prior test results." (ECF No. 29-3). PCO #12 and PCO #13 were again denied in that letter. *Id*.

### b. Procedural History

Baltimore Pile filed the present lawsuit against Travelers and JJID on April 9, 2024, in the Circuit Court for Baltimore City. (ECF No. 1). Baltimore Pile filed an Amended Complaint in the same court on May 3, 2024, which is the operative complaint. (ECF No. 3). Baltimore Pile asserts two counts against Defendants: Payment Bond Claim against Travelers (Count I); and Breach of Contract against JJID (Count II). *Id* at 4. Upon Defendants' petition, and under a diversity of citizenship theory, the lawsuit was removed to this Court on July 26, 2024. (ECF No. 2). On September 17, 2024, Defendants filed their Answer to the Amended Complaint and JJID asserted a counterclaim against Baltimore Pile, alleging breach of contract. (ECF No. 10). Currently pending before the Court is Plaintiff's Motion for Summary Judgment and JJID's Cross-Motion for Partial Summary Judgment. (ECF No. 25; ECF No. 28). Baltimore Pile seeks summary judgment as to both counts of its amended complaint, limited to the remaining base contract amount, plus attorney's fees. (ECF No. 28). JJID asks for summary judgment as to liability only on their breach of contract counterclaim. (ECF No. 29-1). Discovery is still in progress; the current deadline is September 30, 2025. (ECF No. 29-1; ECF No. 24).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) requires the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute as to a material fact "is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *J.E. Dunn Const. Co. v.*

*S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 600 (D. Md. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A nonmoving party "opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(e)).

The Court is "required to view the facts and draw reasonable inferences in the light most favorable to" the nonmoving party. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (citing *Scott v. Harris*, 550 U.S. 372, 377 (2007)). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to 'resolve all factual disputes and any competing, rational inferences in the light most favorable' to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 288, 230 (1st Cir. 1996)). However, the Court must also "abide by the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Heckman v. Ryder Truck Rental, Inc.*, 962 F. Supp. 2d 792, 799-800 (D. Md. 2013) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)). Consequently, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.*, 152 F.3d 326, 330-31 (4th Cir. 1998).

### III. ANALYSIS

#### a. **Maryland Contract Law Applies to Both the Subcontract and the Payment Bond**

Per the long-established Erie Doctrine, this Court, in a diversity action, generally applies the substantive law of the "forum state, including its choice of law rules." *Bank of La. v. Marriott Int'l, Inc.*, 438 F. Supp. 3d 433, 441-42 (D. Md. 2020). First, as to the Subcontract, because Maryland is the forum, Maryland choice of law rules apply. *Id*. In Maryland, if a contract contains a choice of law provision, the law specified in that contractual provision is generally applied. *Cunningham v. Feinberg*, 107 A.3d 1194, 1204-05 (Md. 2015). The "Dispute Resolution" section of the Subcontract incorporates the choice of law provision from the Prime Contract for disputes "involving acts or omissions of the Owner," MDTA. (ECF No. 25-2 at 6). The dispute at issue relates to MDTA's act or omission regarding approval of Baltimore Pile's work, so the choice of law provision in the Prime Contract controls. The parties confirmed via email on August 7, 2025, that the Prime Contract mandates application of Maryland law. Thus, substantive Maryland law will govern claims under the Subcontract.

Within the payment bond contract, the Court recognizes the possible incorporation of an additional construction contract which the Court does not have, and which may, in theory, specify application of a different law. (ECF No. 25-6 at 1). However, where the parties consent to the application of particular law, no further inquiry is necessary. *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (applying New York law where the parties relied primarily on New York law in their briefs, though Utah law may have been appropriate otherwise). Additionally, "[w]here neither party argues that the forum state's choice of law rules require the court to apply the substantive law of another state, the court should apply the forum state's substantive law." *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 782 (4th Cir. 2023) (quoting *Echo, Inc. v. Whitson Co.*, 52 F.3d 702, 707 (7th Cir. 1995)). Therefore, because the parties have relied on Maryland law in their briefs on the issue and have not otherwise argued that a substantive

law other than Maryland law applies, the Court applies Maryland law to the payment bond claim as well. (ECF No. 25; ECF No. 28).

### b. **Summary Judgment is Inappropriate as to Both Baltimore Pile's and JJID's Breach of Contract Claims**

Under Maryland law, the elements of a breach of contract claim are (1) a contractual obligation; (2) breach of that obligation; and (3) damages. *Transamerica Premier Life Ins. Co. v. Selman & Co.*, LLC, 401 F. Supp. 3d 576, 596 (D. Md. 2019) (quoting *Tucker v. Specialized Loan Servicing, LLC*, 83 F. Supp. 3d 635, 655 (D. Md. 2015) (citations omitted)). Baltimore Pile asserts that it is due at least the unpaid $63,593.75 balance of the $120,000.00 contract amount for two reasons: 1) JJID had a contractual obligation to pay Baltimore Pile "within TEN (10) days after the Contractor receives monies due . . . from the Owner," and 2) the Maryland Prompt Payment Act mandates payment of subcontractors within seven days of receipt of payment for subcontractor's work. (ECF No. 25; ECF No. 25-2 at 3). JJID, to the contrary, argues that: 1) payment is only contractually due subject to the satisfaction of the condition precedent of MDTA approval, which it argues has not occurred, and 2) JJID was entitled to withhold payment pursuant to its contractual right to issue backcharges in response to Baltimore Pile's failure to perform. (ECF No. 28).[6] The Court will address each issue in turn.

### i. **Summary Judgment Is Not Warranted Under the Maryland Prompt Payment Act**

The Maryland Prompt Payment Act provides, in pertinent part, that a contractor "shall pay undisputed amounts owed to its subcontractors within 7 days after receipt by the contractor or subcontractor of each payment received for its subcontractors' work or materials." Md. Code Ann.,

---

[6] JJID also briefly mentions that it is entitled to indemnification from Baltimore Pile for costs and expenses as related to Baltimore Pile's alleged deficient performance. (ECF No. 28-1 at 13). As the Court cannot at this time determine the sufficiency of Baltimore Pile's performance, the Court will not herein address JJID's indemnification argument.

9

Real Prop. § 9-302 (West). Payments due are considered "disputed" when the parties disagree about whether the contractual work was completed successfully. *Gray Constr., Inc. v. Medline Indus., Inc.*, No. CV SAG-19-03405, 2023 WL 2333218, at *17 (D. Md. Mar. 1, 2023) (holding that prompt payment was not required under the Maryland Prompt Payment Act where the parties disagreed about whether the work was defective). In this case, because JJID and Baltimore Pile disagree, by opposing affidavits and as discussed further below, as to the success of Baltimore Pile's performance, summary judgment is not at this time warranted under the Maryland Prompt Payment Act. (ECF No. 28-2).

### ii. A Genuine Dispute of Material Fact Exists as to Alleged Breach of the Subcontract by Either Party

The Court will focus on the first two elements of a breach of contract claim—first, the scope of the obligation, and second, the existence of any breach. *Transamerica v. Selman*, 401 F. Supp. 3d at 596. In Maryland, contracts are interpreted by evaluating the four corners of the document, as a whole, for the objective intent of the parties. *Cochran v. Norkunas*, 919 A.2d 700, 709-10 (Md. 2007). Maryland courts give effect to the plain meaning of unambiguous language, without regard to the parties' subjective intent; however, contractual language that could have more than one meaning to a reasonable person, and is thus ambiguous, is interpreted as to "what a reasonable person in the position of the parties would have thought it meant." *Id*. After review of extrinsic evidence, the court should resolve any remaining ambiguities against the draftsman of the instrument. *John L. Mattingly Const. Co. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010). Finally, a breach exists when the evidence shows a failure by one party to perform a contractual duty. *EBC Props., LLC v. Urge Food Corp.*, 290 A.3d 1053, 1070 (Md. App. Ct. 2023).

Neither party asserts that the contractual obligations at issue are unclear due to ambiguous language. As relevant to deciding the motions at issue here, this Court finds that the terms have one reasonable meaning and are thus unambiguous and subject to a plain language interpretation. According to the plain language of the Subcontract, the scope of Baltimore Pile's obligations included installation of the auger cast piling, load testing, and provision of an engineered design, subject to any specifications in the Prime Contract and, presumably, the Owner-approved engineered design. (ECF No. 25-2 at 2).[7]

As mentioned previously, Baltimore Pile asserts that, under the Subcontract, JJID owed payment to Baltimore Pile within ten days of JJID's receipt of payment from Schlosser for the auger cast pile work. (ECF No. 25-2 at 3). JJID argues that it has rightfully withheld payment because the Subcontract only requires payment subject to satisfaction of the condition precedent of MDTA approval of Baltimore Pile's work—approval which JJID says has not occurred. (ECF No. 28-1 at 10). First, Baltimore Pile's interpretation of the contractual terms of payment gives effect to only one sentence of the second paragraph under section II of the Subcontract, failing to recognize the closing sentence in that paragraph, which clearly states that if "an invoice is disputed, the undisputed portion shall be paid while the dispute is being investigated and resolved." (ECF No. 25-2 at 3). Given that the plain language of the contract allows for withholding of payment in dispute, and because the parties disagree on whether the work has been completed per the contract, the section Baltimore Pile relies on does not, in fact, require JJID to submit payment at this time.

Next, per the Maryland courts, a condition precedent exists where "a fact, other than a mere lapse of time, []must exist or occur before a duty of immediate performance of a promise arises."

---

[7] The Court has not had the opportunity to review the Prime Contract. Additionally, Baltimore Pile suggests that the incorporated Proposal excludes certain inspections and circumstances, but the Court declines to determine the existence or extent of those exclusions at this time. (ECF No. 29-1 at 3).

*Richard F. Kline, Inc. v. Shook Excavating & Hauling, Inc.*, 885 A.2d 381, 387-88 (Md. Ct. Spec. App. 2005). Furthermore, "[a]lthough no particular language is required to create a condition precedent, words and phrases such as 'if,' 'provided that,' 'when,' 'after,' 'as soon as' and 'subject to,' have commonly been associated with creating express conditions." *Id* at 388; *Laurel Race Course, Inc. v. Regal Const. Co.*, 333 A.2d 319, 326 (Md. 1975) (holding that the following language created a condition precedent on approval: "when he finds the work acceptable under the Contract . . . [t]he balance due the Contractor . . . will then be paid"). The relevant language in the Subcontract states that "[u]pon completion of the work covered by this Agreement, and after all such work is accepted by Owner, payment will be made to the Subcontractor in full, less all previous payments and any applicable retention." (ECF No. 25-2 at 3). Furthermore, the Subcontract also provides, in a later section entitled "Special Provisions," that "JJID can only pay for MTA approved materials and workmanship" *Id*. at 7. The Court concludes as a matter of law per the plain language of the Subcontract, including the use of the word "after", that MDTA approval must occur prior to payment, thus establishing a condition precedent to payment.

> The Subcontract further provides, in section VIII entitled "Backcharge and Termination":
>
> Should the subcontractor fail in any respect to prosecute the Subcontract Work with promptness and diligence, or fail to promptly correct defective work, or fail in performance of any of the agreements contained herein, the Contractor may, in its sole discretion and upon not less than five (5) days written notice provide such labor, materials and equipment and deduct the cost thereof, from any money then due or thereafter to become due to the Subcontractor.

(ECF No. 25-2 at 6).

A plain reading of the relevant unambiguous terms of the Subcontract therefore informs the Court that there are two contractual scenarios under which JJID might retain final payment, as it has done here. First, if the required condition precedent to payment, MDTA approval, has not occurred, and second, if Baltimore Pile failed to perform such that the backcharge provision of the

12

contract allowed for retention of the costs incurred as a result of Baltimore Pile's failure. In the eyes of the Court, a genuine dispute of fact currently exists as to both MDTA approval and to the backcharges.

JJID attests, via affidavit, that MDTA approval of Baltimore Pile's work has not occurred and that Baltimore Pile was subject to backcharges to remedy, or justify via additional testing, its deficient work. (ECF No. 28-2 at 5). JJID further relies on MDTA's 2024 letter, which highlights the "poor performance, protracted installation time, deficient equipment, and lack of qualified supervision on the part of Baltimore Pile Driving." (ECF No. 28-4). Baltimore Pile, to the contrary, states via affidavit that it "properly performed its auger cast pile foundation work" and that the building has since been constructed on top of that foundation. (ECF No 25-1 at 2). Baltimore Pile also points to an MDTA letter, from March 2025, which suggests the pile work has "met the design criteria." (ECF No. 29-3).[8] In this same communication, MDTA appears to award compensation to cover the additional testing, some of which was "redundant and supported the prior test results." *Id*.

First, the Court finds that there exists a genuine dispute of fact between the parties, created by their opposing affidavits and the contradictory emails from MDTA, to prevent the Court from deciding at this time if MDTA approval has occurred.[9] However, when a self-interested party's approval is required as a condition precedent to performance of a contractual obligation, an objective test of reasonable satisfaction is generally applied. Restatement (Second) of Contracts §

---

[8] This most recent 2025 letter which indicates apparent reversal of MDTA's prior decision on PCO #11 encourages the Court to question whether MDTA's decision on the other, related, PCOs is final.

[9] Per *Sanchez Carrera v. EMD Sales, Inc.*, an affidavit is sufficient to defeat summary judgment where it creates a genuine dispute by asserting facts based upon the affiant's personal knowledge. 402 F. Supp. 3d 128, 140 (D. Md. 2019) (reasoning that contrary personal testimony of sales representatives was sufficient to create a jury question on issue of the scope of a sales representative's duties). Both the Lawrence and Loudon affidavits state that the assertions are based on "personal knowledge" and, given the stated roles of the affiants, the Court has no reason to believe otherwise at this time. (ECF No. 25-1; ECF No. 28-2).

228 (1981). Therefore, the Court must also determine whether, objectively, MDTA should have given approval based upon Baltimore Pile's performance of its obligations under the Subcontract.

Because the remaining two paths which might justify JJID's withholding of final payment—1) whether MDTA should have granted approval and 2) whether backcharges were warranted—both depend on whether Baltimore Pile properly performed its work, the Court resolves them both at once by evaluating Baltimore Pile's performance under the Subcontract. Per the same evidence reviewed above, it is clear to the Court that there was, at some point, a question as to the sufficiency of Baltimore Pile's work and more testing was performed than initially planned for. However, it is not clear whether, by its March 2025 letter, MDTA has retracted none, all, or part, of its prior criticisms of Baltimore Pile's work. Even further, because the Court has been made aware of at least two different types of testing performed by Aver and is also aware that Baltimore Pile had an obligation to perform at least some load testing per the Subcontract, it is unclear to the Court which of these tests MDTA is referring to in its letter as "prior" and "redundant," and which, if any, Baltimore Pile was responsible for. Finally, notwithstanding the contradictory and incomplete nature of MDTA's communications, the parties also assert via affidavit, as mentioned above, opposing conclusions as to the sufficiency of Baltimore Pile's work. Therefore, because there exists a genuine dispute of material fact as to both JJID's and Baltimore Pile's breach of contract claims the Court must conclude that summary judgment is not warranted at this time as to either.

    c. **Summary Judgment is Inappropriate as to Baltimore Pile's Payment Bond Claim Against Travelers**

Baltimore Pile asserts that it is due summary judgment as to its payment bond claim against Travelers. (ECF No. 25). In response, Defendants argue that summary judgment is not warranted at this time because Travelers' liability to pay is subject to the liability of JJID under the

Subcontract, and because JJID is not liable, neither is Travelers. (ECF No. 28). The Court agrees with JJID's assessment. In Maryland, liability of the issuer of a payment bond is "coextensive with that of the principal." *Nat'l Union Fire Ins. Co. of Pittsburgh v. Wadsworth Golf Const. Co. of Midwest*, 863 A.2d 347, 353 (Md. Ct. Spec. App. 2004), aff'd sub nom. *Nat'l Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc.*, 879 A.2d 101 (Md. 2005). As such, because there exists, as discussed above, a genuine dispute of material fact as to JJID's liability for breach which prevents summary judgment on that claim, summary judgment is also inappropriate as to the payment bond claim against Travelers.

### IV.   CONCLUSION

For the reasons stated, it is this 11th day of August, 2025, hereby ordered:

1) Plaintiff's Motion for Summary Judgment (ECF No. 25) is DENIED;

2) Defendant JJID's Cross-Motion for Summary Judgment (ECF No. 28) is DENIED.

Dated: August 11, 2025

                                                                                        /s/
                                               J. Mark Coulson
                                               United States Magistrate Judge